The first case we'll hear is Gillette v. Prosper. We'd better give you a head start, it's quite a walk from the... Yes, it is.  good morning, your honors. May it please the court, Joseph DeRuzzo on behalf of the appellant Ronald Gillette. I'd like to reserve four minutes of rebuttal time. That'll be granted. Thank you, your honors. This is a case of statutory construction. The district court erred in denying Gillette's re-judged district court pursuant to 18 U.S.C. section 3626 and section 2284. However... Are we going to talk about jurisdiction? Yeah, let's get right into jurisdiction. No problem, your honor. There are five independent grounds for this court to exercise jurisdiction. I'll address each. The first, the denial of the motion operated as a final order under 1291. The second, that this court has jurisdiction under collateral order doctrine. The third, that this court has jurisdiction under the Gillespie slash Twilight Zone doctrine. The fourth, that this court has jurisdiction under 1292. And the fifth, that this court has mandated jurisdiction under the All Writs Act. Let's hit 1291, all right? Now, we've read your briefing and understand you think this is a final order, but isn't it the case that the judge said you didn't carry your prime facia case for a three-judge panel, but made no ruling on the merits on any of your claims, including the relief that you were seeking that is not release? I mean, you've asked for things besides release, haven't you? In each wherefore clause of the amended complaint, there are claims of relief besides a prison release order, yes. Okay, so by just the standard definition of finality under section 1291, how can it be a final order if there are still claims, which there are, and there is still relief that you're seeking, which you are, other than the kind of relief that you have to get through a three-judge panel? Well, Judge Jordan, I would submit that in this case, the main thrust of the amended complaint is a prison release order. It may be the main thrust, but we're talking about finality. So if you acknowledge, as I think you have to, that your complaint, the amended complaint, seeks other kinds of relief, and that those claims for relief are still outstanding, it can't be final under 1291, can it? Well, Judge Jordan, I would submit that the denial of three-judge motion effectively throws Gillette out of court, and it would turn the court's attention to the Supreme Court case of Idlewild Bondriage Liquor Corporation. Footnote two of that decision states, quote, the Court of Appeals properly rejected the argument that the order of the district court was not final, hence unappealable, under sections 2291, 2292, pointing out that appellant was effectively out of court. Now, in that case... But how is Mr. Gillette effectively out of court? His claims still are there. She didn't say he doesn't have claims. She didn't touch that. She didn't say he's not entitled to those other kinds of relief. She didn't touch that. So I don't understand how that footnote from Idlewild meets or addresses the concern I'm trying to get you to grapple with. There are claims for relief. They still exist, and the court hasn't gotten to those. So under the definition of 1291, I'm struggling to understand how that's final. Now, maybe you've got some exception to 1291, and we'll talk about that. But under 1291, how is this a final order? Judge, I would submit that the non-prison release order claims for relief are purely incidental, that the main thrust of the case... Wait, hold on a minute. I thought they were the crux of the matter, because here you've got ongoing litigation about the conditions of confinement in this prison. Correct. And your client claims that he's being held unconstitutionally because of heat and other issues, right? Correct. So the federal district judge has the power, does she not, to remedy those, let's assume for the sake of argument, that they are unconstitutional conditions of confinement. They could be remedied by order of court, right? In theory, I would say yes. All right, then he's made whole, except he says, well, I don't want a nice, clean prison cell. I want out. Yes, I want out or a transfer to a constitutionally compliant facility. Well, he won't need, if this district judge, if this judge enters an order, somehow requiring the construction or amendment of the current facility, maybe even just one cell just for this gentleman, then he doesn't need to be transferred. Well, Judge Hardiman, I would think that theoretically that's possible, although I think based upon the facts of the ongoing litigation over three decades, the probability that a district court could order writ small, that one cell would be brought up to constitutional conditions. And you have to remember, I appreciate the unlikeliness of that. You're absolutely right about that, but to Judge Jordan's point, you haven't given this judge the chance to even try to do that yet. Well, I would submit this, Judge Hardiman, even if you could do that in the one small cell, my client by his very nature has to be brought into the general prison population. He's got to eat. He's got to go to the bathroom. He gets opportunities to go out and exercise all the things that someone does when they're in a correctional facility. So the fact that the place is extremely dangerous, there's inappropriate fire restrictions, that he's not getting mental health and medical treatment, so to say that you could fix the cell, perhaps you could. But you have to fix everything that goes into how he's being held in an unconstitutional facility. I agree with you, but this judge has the power to fix those things if she so chooses, if she deems it's appropriate in this case. And she hasn't been given the chance to do that. Isn't that right? Well, I would submit... Because you're saying, look, we don't even want to be here. You're saying, we don't want to litigate our case in this venue. We don't want this one judge. We need a three-judge panel. Yes, because... But the one judge hasn't been given the chance to remedy the unconstitutional conditions that you allege. Well... You're almost presuming that she couldn't, it's too high a hill to climb and, you know, you need to get a different tribunal to do it. I think when you look at the facts of the case, not only this case, but the 30 other litigation that the federal government is having against the Virgin Islands government, I think, you know, this court doesn't have to necessarily atomize my client's facts without looking at the grander facts. I mean, you look at the... You were the master of the complaint, you meaning your client, master of the complaint here. I mean, you didn't have to plead this with multiple claims and multiple forms of relief sought. But you did what you did. So let's assume for the sake of discussion that we thought it wasn't final and move to collateral order. How is this something that is completely separate from the merits? This order, as we've just been talking about, appears to go to the merits, appears to be all tied up with the merits argument that this is an Eighth Amendment violating facility. How can you make the argument that we're dealing here with this as a matter that is completely separate from the merits? Well, Judge, I would submit that the composition of the court that gets to entertain the case is entirely separate from the relief, whether my client gets relief in full or in part, it's the three judges or one judge, whoever gets to actually adjudicate the case below. So that may or may not be true, but the test, as I understand it, for completely separate is that you could deal with that order without dealing with the merits, but since the way you decide whether to get a three-judge panel is to make a prima facie showing of things which, if I  That is that you have something that violates the Eighth Amendment, right? That would warrant a release. How is that, how could we address this without addressing the merits? And that's exactly the point, Judge Jordan, because if it goes to the merits, then I would submit it's under 1291. If it doesn't go to the merits, then it falls under the collateral order. It can't be both. Okay. So would you agree then that if it is tied to the merits, you can't make it under the collateral order doctrine, right? And so then we're back to 1291 and asking ourselves whether it's final and reviewable. Well, I think the analysis would be if it's, I would say that the two are mutually exclusive, but if you're either in the 1291 because it is tied to it can't be heads, I lose, you know, tail the government wins. Could you address the third step of the collateral order doctrine? Why is this effectively unreviewable? Well, in reviewing the Supreme Court's recent decision in Mohawk for that third part of the collateral order, something is unreviewable when A, it would imperil a substantial public interest or B, some particular value of high order. And I would submit the Supreme Court's decision in Allen versus State Board of Elections, which discuss why a three judge panel is needed because Congress has determined that three judge courts are desirable involving confrontations between state and federal power or in circumstances involving potential for substantial interference in government administration. That is of the highest order. That would fall under the third part of the collateral order doctrine. And as a result, this court would have jurisdiction to review. All right. You don't have a lot of time left. Do you want to just touch on your, although we've read your briefs, of course, but your Twilight Zone, which is a very attractive sounding doctrine, but I think one we haven't adopted yet. Well, and your other mandamus arguments perhaps. Well, I would submit that the Twilight Zone, it's Supreme Court case law, whether this court has or has not addressed it is of no moment. And as to mandamus, I would submit that if I'm correct, that Shapiro v. District Court is impervious to discretion. It would necessarily follow that mandamus release if it's available. So as a result. Very unusual situation where we exercise our mandamus jurisdiction. It is. But, you know, the Supreme Court was clear. Impervious is impervious to judicial discretion. And I would submit when you have those statutes that are impervious to judicial discretion, that would be the extraordinary circumstance that would require mandamus relief. Look forward to speaking to everyone on rebuttal. Thank you. Good morning. May it please the court, I'm Kimberly Salisbury, Assistant Attorney General here for the Territory of the Virgin Islands today. And as you know from our brief, we believe there are no grounds for jurisdiction in this matter. We are arguing that it is, in fact, a final order under Section 1291 and that the effect of Section 1291 is to disallow any appeal from a decision which is incomplete. And that is clearly what we're dealing with in this case. How about the Gonzalez case, the 1974 Gonzalez case? Does that answer our question here with respect to final order? You're not familiar with that one? It's not jumping out at me. OK, that's all right. Sorry. It seems quite clear in this case that it's not a final order. Let's go with what your adversary argued. You know, yeah, it's true. I put other things in my complaint. A lot of people do. But this was really the crux of it. Does it matter? The fact that there are still other things that may not be his main focus still out there. Absolutely. And it matters because, I mean, also if you go into the collateral order discussion, because it's completely reviewable on appeal. In Brown v. Plata, the U.S. Supreme Court was reviewing the decision to impanel a three-judge court in that case. There's no reason for this. That's reviewable. Ms. Salisbury, but that we're dealing here with a case that has dragged on for three decades and which the Virgin Islands, according to the plaintiff and according to the reports looking at the progress since the 2013 order, indicate minimal progress, what, 14 percent, something like that, over about three years. I mean, at this rate, if you assume a linear progression, there might be compliance in another couple of decades. I mean, is this really the circumstance where the federal courts and the prisoners are supposed to wait 50 years for the Virgin Islands to get their act together and provide a facility which is not constitutionally deficient? Well, Your Honor, first of all, I would submit that that's not this case. This case is solely about Mr. Gillette, as opposed to the system as a whole. It is for certain counts that he is in. When you say that isn't this case, his claims are very, very much about the same thing. Similar situations. He's in the prison. He is in the famous Golden Grove prison. Additionally, the District Court... A fabulously misnamed place, apparently. The District Court judge found positive strides towards compliance when she was issuing her order in, well, in this case, in 2013, she said that she's seen positive strides and therefore that's why she believed that the territory needed more time to comply. But regardless, this particular order that we're talking about is just simply not final, given the fact that she has not ruled on the merits. Well, let's talk about that for a minute. If he does prevail on the merits, what relief can the District Court order? I think most of the relief that he has requested can be ordered while keeping him at Golden Grove. And what would that relief look like? I know you're not planning on losing on the merits, but consider the possibility you might. What would that order look like? It's a little hard to say. Mr. DeRuzo's saying, you know, look, you can't just say, you know, build him a nice cell, you know, on the outskirts of the Golden Grove. I mean, you know, help us out here. What would that relief look like? The District Court found that many of his counts were particular to the plaintiff. They were personal. They had to do with his particular mental health. It may just involve getting him a doctor that he hasn't seen. I don't know the particular merits of his case because we haven't gotten there yet. All we have is this motion of pleading. I mean, you know, it's been pleaded. Right. I mean, it's not just mental health. Weren't there issues of heat? And protecting him from attack. Environmental issues. Which I believe are all being addressed through the prison litigation. And well, I'm not sure that's a helpful answer to you because if they're being addressed through the prison litigation, then it might take, you know, until two decades. But it is a previous order that is in effect and just hasn't had a reasonable amount of time since 2013 to be... That's an interesting way to put it because when you say not reasonable amount of time since 2013, is it in fact the case as a matter of law that even though the earlier orders are not legally operative, that because they are not legally operative, they are irrelevant? I mean, does the fact that a 2013 order superseded and replaced earlier orders mean that three decades of prior non-compliance just are to be ignored? It's a very interesting question, Your Honor. When you look at Brown v. Plata, the U.S. had 12 years of reform and reform prior to that. And they said that was a case where a reasonable amount of time had existed and therefore they thought the three-judge panel was warranted. But, and you do look at the entire history. That is correct. That is what they said. However, that case didn't involve the termination of prior orders under the PLRA as this case does. And that's exactly the question I'm asking you to address. There was, there was a termination of the prior orders in the institution of a new order. That's clearly a legally significant event. But even though that's a legally significant event, if as you just acknowledged, we're to look at the whole course of the problems at the prison, then we're not talking about a three-year problem. We're talking about something that's in excess of three decades worth of problems and which I'll repeat, if the most recent report, at least the most recent report that you guys dealt with is accurate, you're not even a fifth of the way through progress on that. And if you assume linear progression there, that means it's decades out yet to fix this probably. I guess decades is a little strong. You could say earliest would be like 2030, if my math is right. So the question is, at what point is enough enough and the district court is under some obligation to say, you've had enough time, you've had decades of time? According to the district court, we're not there yet at Golden Grove. But I believe that the district court came to that conclusion because after reviewing all the previous orders, they were found to be, to not meet the PLRA narrowness requirements. And once they're terminated, she felt the obligation to give the territory, and I believe rightly so, a reasonable amount of time to comply with this new, more narrow consent decree that was instituted in 2013. Otherwise, what was the point of looking at all the previous orders and starting a new in 2013 if we're just going to keep looking at them anyway? Then we're not going to be following the spirit of the PLRA at all, which is to narrow the court's oversight of the consent decrees and prison litigation. Well, yeah, I guess what Judge Jordan is saying, like your big cruise ships here in your bay, I mean, it takes a long time to turn around, but this is a really long time. Well, Your Honor, with all due respect, this is the Virgin Islands. Everything takes a really long time. That's true. Not trying to offer any justification, but it is in fact true. I have lived here for 20 years and everything takes a really long time. And the Constitution doesn't make accommodations for parts of the country that operate at different speed. That's not your argument, is it? No, Your Honor. However, the district court, I believe, properly found that if you're looking from 2013 under a new consent decree, which no longer violates the PLRA as she found, then the territory should be given a reasonable amount of time in order to comply with this new, more narrow consent decree. What is that reasonable amount of time? Why don't you give us some comfort that we wouldn't be back here in two years or three years hearing the very same thing? Or can you do that? I don't feel comfortable doing that. I believe it will depend on the special master's reports. What kind of compliance is happening? Where has there been progress? Where hasn't there been progress? There's an awful lot of subjective factors to decide. But I guess your point there is that that's not this case because this is an individual case. That whole issue may well be back before the trial court in our court in conjunction with the class action litigation. Absolutely. But now in this case, you do concede at page nine of your brief that, quote, the possibility still exists that the district court will require a three-judge panel to be formed. I'm quoting your brief there. Under what circumstances might the district court still enter an order convening a three-judge court? Depending on the decision and the merits of the case, it still exists that the district court in time, sua sponte, decide that if this litigation continues for another two years, that the reasonable time limit has in fact expired. The territory is not complying with the new consent decree and therefore a three-judge panel would be appropriate in this case, according to the two-pronged. All right. So the next step in that scenario would be this judge would find that Mr. There's no hope of fixing that. So the only answer is release, but release would have to be ordered by the three-judge court. Yes. Although something I didn't raise in my brief because the district court specifically didn't address it in footnote four, the judge said that she was not going to address the actual definition of a prison release order because she didn't find that this case met the other two prongs. I find it curious that the definition of a prison release order specifically says for release of prisoners, plural, as opposed to one. So quite frankly, I'm not convinced this applies at all. Are you suggesting that a single prisoner could not, as a matter of law, could not be entitled to a three-judge panel by showing a violation of the PLRA and a unconstitutional deprivation of rights because of prison conditions? That's what I'm suggesting, that this prison release order is for the release of prisoners, plural. What's the case support for that? There is none. There is none. Not that I could find. I researched the definition of prison release order, but prisoner is defined. And then Congress specifically used the word prisoners, plural. And I do believe this was officially established for population control. So I'm not sure that he can't get his desired relief without a prison release order, is my point. You're starting to run out of time here. Do you want to move on to address his other arguments, other than final order? Like mandamus? We don't believe that the drastic remedy of a writ of mandamus is necessary or appropriate in this case. I have the same discussion with respect to the Twilight Zone or Gillespie doctrine. This litigation is not impeded without disappeal. The judge can go on to address all the merits in his complaint individually without the three-judge panel. And as far as the collateral order, all three requirements must be met for collateral order. And that is just simply not the case. This order is reviewable on appeal in particular. That seems quite clear. We believe the district court was correct in their decision with regard to the three-judge panel. And we also believe that this court does not have jurisdiction to hear it at this time. All right. Thank you. Thank you. In respect to Judge Jordan's question about the fact that the district court in 2013 effectively wiped the slate clean. That was under subsection B of 36 to 26. And subsection B has nothing to do with subsection A. I would submit that, yes, the district court had the province and had the authority under subsection B to terminate prospective relief. But that doesn't erase decades, especially because this case or the Golden Grove case began in 1986, a full decade before the PLRA was enacted. And the Ninth Circuit in Gilmore View, California, footnote 25, talked about you don't need to effectively forget or wipe the slate clean on what happened before the PLRA was enacted. And what is the meaning of the parties to the class action agreeing to a new consent decree, right? Isn't the purpose of entering into that kind of an order not to say we forget the past, but to say we have a new beginning here, some new baseline against which to measure progress? I mean, that's the point of having a new consent decree, to have a new baseline for measuring progress, isn't it? In general, I wouldn't take issue with that, yes. Okay. So if that's the case, how could it be wrong for Judge Lewis to look at that and say, well, my measuring point begins at 2013 and that's where I'm taking the baseline and that's only been a couple of years here. I got to give them a little more time to deal with it. Well, I would submit that since my client wasn't a party to that case, litigants can settle cases for whatever basis they deem appropriate. And to effectively stick my client with, because the parties had litigation fatigue and decided it was just easier to conserve resources or whatever reason they may have had to wipe the slate clean and enter with a new consent decree in 2013, shouldn't affect my client and whether he can get relief as to the unconstitutional conditions. Otherwise, my client will be at the whim of some other unrelated litigation. Does Judge Lewis have the power to transfer Mr. Gillette to a compliant facility without convening a three-judge panel? No, because that would be a prisoner release order. A transfer is a release? Yeah, because under the- How do we know that? Because the definition of Juan Assange's subsection G says a prisoner release order has anything to do with letting a person out, prohibiting a person to going into, or anything that reduces the population. By definition, a reduction of one person is reducing a population- Population where? Of the prison, of Golden Grove. So if Mr. Gillette is transferred out of Golden Grove, it has reduced the population by one. So that is a prison population reduction. What about a transfer from cell block to cell block? No, that would not be, because that would still be within the confines of Golden Grove. What about specialized medical care? Does Judge Lewis have the power to order specialized medical care? Judge Lewis does have the order, as long as that would be within the confines of Golden Grove, if she was ordered- Same with environmental and safety. She has the power to order all those things as well. Right, but if she was determined that he's not getting medical care in Golden Grove and he needs to go to a stateside facility in order to get appropriate medical care, that again would be a prison population reduction that would require a three-judge panel. The one thing I would like to end on is, I do have an outstanding motion for preliminary adjunction- Hold on just a moment. Okay. If she said, provide this kind of mental health counseling for Mr. Gillette, and the prison said, we can't do that, we'll have to transfer him. And she said, look, I'm just telling you, you need to provide it for him. I'm not telling you, you have to transfer him, just telling you, you got to provide it. And they chose to transfer him. Would that decision by the Virgin Islands constitute a reduction in the prison population pursuant to a court order? Or would that be an independent decision by the Virgin Islands about how to address a court? Do you understand what I'm getting at? I do understand, and I think you're right. I think it would be at the discretion. However, if they were then just to say that, for example, they transferred him to a stateside facility to get mental health care, and that was strictly upon the discretion of the Bureau of Corrections, and they then decide to bring him back for whatever reason. And once they bring him back, and he's not getting mental health care, I would submit, you know, I would move to prohibit them to bring him back to Golden Grove where he's not getting mental health treatment. And that would be a prisoner release order. I would like to end on. Go ahead. You can tell us about your outstanding motion. Either the same day or the day after I move for a preliminary injunction. After what? I filed the motion to convene a three-judge panel. That motion has been outstanding. It's been well over at this point. I want to say two years. If Judge Lewis denies my preliminary injunction order, I would submit that she's effectively already done that. But if she denies it, you know, motion preliminary injunction denied, I would submit that that right there shows exactly why it goes up on appeal. I'm going to argue she didn't have the jurisdiction to deny the preliminary injunction because why? Because only a three-judge court can enter a prison population reduction or prisoner release order. And that's exactly what my motion preliminary injunction asked for. Conversely, if, you know, if the motion is granted, I would fully anticipate the Virgin Islands government is going to take it up on appeal. And what are they going to argue? That Judge Lewis didn't have jurisdiction to enter a prison population reduction. And therefore, what she did was alter barriers. Kind of like what happened in... Well, not necessarily. I think I just heard Ms. Applied as single prisoners, perhaps. So I guess we'll wait and see what happens. Right? That is true. Thank you for your time. And I ask the court to reverse and remand with instructions to convene a three-judge panel. Thank you very much. Thank you, counsel. Thank counsel for their excellent briefing and arguments. We'll take.